IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LESZEK PAWELKOWSKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 21-CV-882-MAB |
| | ) |
| LYNN PITTMAN, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on Defendant Dr. Doris Williams' Motion for Summary Judgment for Plaintiff's Failure to Exhaust Administrative Remedies (Docs. 84, 85). For the reasons set forth below, Dr. Williams' Motion for Summary Judgment for Plaintiff's Failure to Exhaust Administrative Remedies is DENIED (Doc. 84).

### BACKGROUND

Plaintiff Leszek Pawelkowski brought this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while incarcerated at Lawrence Correctional Center (*see* Docs. 1, 28). Plaintiff's Amended Complaint alleges that Plaintiff began experiencing pain in his left arm and hand beginning in August 2020 (Doc. 28 at pp. 12-13; Doc. 36 at p. 2). Due to the pain Plaintiff was experiencing, he was unable to perform the tasks assigned to him as a worker in the dietary unit at Lawrence (Doc. 36 at p. 2). Thereafter, Plaintiff saw Defendant Dr. Lynn Pittman, but he claims Dr. Pittman failed to property test, evaluate, and treat his injuries (*Id.*). Plaintiff also saw Defendant

P.A. Carissa Luking for treatment of his condition in May 2021 (*Id.*). Plaintiff alleges P.A. Luking told Plaintiff she would submit the paperwork needed for him to receive an MRI, but ultimately failed to do so (*Id.*).

Plaintiff claims he saw Dr. Williams in May 2021 and informed her that his pain medication was not helping and he was unable to write, properly clean himself, or get a good night's sleep (*Id.*). Plaintiff alleges Dr. Williams increased his medication but refused to submit him for any further testing (*Id.*). Plaintiff also alleges that Defendant Lori Cunningham, the Healthcare Director at Lawrence, knew of his condition and need for treatment but failed to ensure he received further treatment or testing (*Id.*). Additionally, Plaintiff contends that Defendant Wexford Health Sources has a policy of preventing inmates from receiving specialized testing and treatment, thus depriving him of necessary medical treatment (*Id.*).

Plaintiff filed his initial Complaint on August 3, 2021 (Doc. 1; *see also* Doc. 25). The Court conducted a preliminary review pursuant to 28 U.S.C. § 1915A and that Complaint was dismissed without prejudice for the failure to state a claim for relief (Doc. 27). However, Plaintiff was permitted to file an amended complaint, which he did on December 9, 2021 (Doc. 28). The Court then conducted a preliminary review of the Amended Complaint and Plaintiff was allowed to proceed on the following counts:

> **Count 1**: Eighth Amendment claim against Dr. Pittman, Dr. Williams, P.A. Luking, and Cunningham for exhibiting deliberate indifference to Plaintiff's arm/hand issues and pain.
>
> **Count 2**: Eighth Amendment claim against Wexford for its unconstitutional policy, practice, or custom of not allowing inmates to receive special testing from outside medical

>                providers which resulted in a denial of constitutionally adequate medical treatment for Plaintiff's arm/hand issues and pain.
>
> **Count 3:**    Eighth Amendment claim against Walker for denying Plaintiff access to medical care on August 20, 2020 and requiring him to continue working while in pain.

(Doc. 36 at pp. 3-5).[1]

Additionally, Plaintiff filed a motion for recruitment of counsel after his case passed preliminary review (Doc. 72). The Court granted the motion on September 5, 2023, and attorney Benjamin E. Waldin was appointed to represent Plaintiff (*see* Docs. 74, 80). Finally, Dr. Williams filed the instant Motion for Summary Judgment for Plaintiff's Failure to Exhaust his Administrative Remedies and supporting memorandum on November 30, 2023 (Doc. 84, 85). Plaintiff filed a response in opposition on January 17, 2024 (Doc. 90), and Dr. Williams filed a reply in support on January 22, 2024 (Doc. 91).

## LEGAL STANDARD

*I.    Summary Judgment Standards*

Summary judgment is appropriate if the movant shows there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the Court "generally will construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013). In other words, courts cannot resolve factual disputes in favor of the party seeking summary judgment. *See Tolan v.*

---

[1] Plaintiff also sought to raise three other counts in his Amended Complaint, but they were dismissed in the Court's Preliminary Review Order (*see* Doc. 36 at pp. 4-5).

*Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, "[t]he nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010).

II.     *Exhaustion Requirements*

As provided in the Prison Litigation Reform Act, "[a] prisoner may not bring a federal suit about prison conditions unless he first has exhausted all available administrative remedies." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011) (citing 42 U.S.C. § 1997e(a)). A remedy has not been exhausted if the prisoner has failed to abide by the procedures for pursuing relief. *Id.* Thus, to properly exhaust one's administrative remedies, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002).

However, an inmate is not required to exhaust administrative remedies that are not actually available to him. *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) ("Remedies that are genuinely unavailable or nonexistent need not be exhausted."). The Seventh Circuit has "found remedies unavailable in a number of instances in which the inmate, through no fault of his own, could not have accessed the grievance procedure." *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018). Additionally, failure to exhaust is an

affirmative defense that the defendants carry the burden of proving.[2] *See Ramirez v. Young*, 906 F.3d 530, 533 (7th Cir. 2018).

   III.   *IDOC Grievance Procedures*

Individuals incarcerated within the Illinois Department of Corrections (IDOC) are required to follow the grievance procedure outlined in the Illinois Administrative Code to exhaust their administrative remedies. *See* 20 Ill. Admin. Code § 504.800, *et seq*. (2017). To initiate the normal grievance process, an inmate must file a grievance with their institutional counselor within 60 days of the discovery of the incident. *Id.* at § 504.810(a). After the counselor provides a response, an inmate may submit his grievance to a grievance officer who is to report his or her findings and recommendations to the Chief Administrative Officer (the "warden") within two months. *Id.* at 504.830(e). The warden reviews the grievance officer's findings and recommendations, and then provides a written decision. *Id.* If an inmate is unsatisfied with the warden's decision, he has 30 days from the date of the warden's decision to appeal to the Administrative Review Board (ARB). *Id.* at § 504.850(a). The ARB then submits a written report to the Director of the IDOC, who makes a final decision within six months, when reasonably feasible. *Id.* at § 504.850(e).

---

[2] In most situations, when considering a motion for summary judgment based upon a prisoner's alleged failure to exhaust his or her administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). However, an evidentiary hearing is not necessary when there are no material factual disputes. *See Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009) (no hearing required where there are "no disputed facts regarding exhaustion, only a legal question"). Here, the Court is able to rule upon Dr. Williams' motion without conducting a hearing as there are no material issues of fact that require a hearing to resolve. *See Robinson v. Budde*, No. 18-CV-6998, 2021 WL 1722857, at *4 (N.D. Ill. Apr. 30, 2021) ("Since the parties agree on the facts, there is no need for a hearing.").

Alternatively, an inmate can request for his or her grievance to be handled on an emergency basis by submitting the grievance directly to the warden. *Id.* at § 504.840. If the warden determines the grievance should not be handled as an emergency, the inmate is notified in writing that he or she may resubmit the grievance in accordance with the standard grievance process. *Id.* at § 504.840(c). Conversely, if the warden determines the grievance is an emergency, the warden must expedite processing of the grievance and respond by indicating what action shall be or has been taken. *Id.* at § 504.840(b). Furthermore, if an inmate appeals the warden's decision on his or her emergency grievance, the ARB is also required to expedite processing of the emergency grievance. *Id.* at § 504.850(f).

## Discussion

I.      *Plaintiff's Grievances*

Dr. Williams' motion includes an extensive record of Plaintiff's grievance filings from 2020 until 2023 (*see* Docs. 85-1, 85-2, 85-3). The Court has reviewed the grievances and associated records provided by Dr. Williams and has limited its analysis to the grievances that discuss Plaintiff's medical concerns and were filed before or near May 2021, the time-period associated with Plaintiff's claim against Dr. Williams.[3] However, while the Court will briefly discuss the key grievances identified by the parties, the Court's analysis focuses upon Grievance 05-21-240 because that grievance is dispositive.

---

[3] Additionally, the parties agree that the grievances discussed below are the key grievances pertaining to whether Plaintiff exhausted his administrative remedies against Dr. Williams, as both Dr. Williams and Plaintiff focused their discussion on the grievances discussed below (*see generally* Docs. 85, 90). Moreover, Plaintiff did not proffer any additional grievances or associated documents to the Court in his response (*see* Doc. 90).

### A. Grievance 08-20-257, dated August 20, 2020 (Doc. 85-3, pp. 24-25)

In this emergency grievance, Plaintiff grieved being fired from his job in the dietary department at Lawrence after informing his supervisor that he was dealing with pain and numbness in his hands and arms (Doc. 85-3 at p. 24). The Warden determined that the grievance was not an emergency, which led Plaintiff to file the grievance through the standard grievance process (*Id.*). Ultimately, the Grievance Officer recommended the grievance be denied because job placements are administrative decisions, and the position Plaintiff was working required full dexterity of both hands (*Id.*). The Warden and the ARB both concurred in the denial (*Id.* at pp. 22-24).

### B. Grievance 10-20-176, dated 10/12/2020 (Doc. 85-3, pp. 51-52)

Plaintiff filed Grievance 10-20-176 on October 12, 2020, to grieve his inability to see a doctor for his hand and arm pain (Doc. 85-3 at p. 51). The Grievance Officer relied upon the notes of Plaintiff's counselor and recommended the grievance be denied as moot because Plaintiff's medical issues were addressed at an October 1, 2020 appointment, and Plaintiff had multiple follow-up appointments scheduled (*Id.* at p. 50). The Warden concurred in the recommendation (*Id.*). However, the ARB denied Plaintiff's grievance without further review because the grievance did not include any dates of when the alleged incident occurred (*Id.* at p. 49).

### C. Grievance 05-21-089, dated 5/10/2021 (Doc. 85-3, pp. 20-21)

Plaintiff filed Grievance 05-21-089 on May 10, 2021, to grieve the continued pain he was experiencing in his hands and the failure of pain medication to alleviate his symptoms, along with the refusal to send him to an outside facility for specialized

treatment (Doc. 85-3 at pp. 20-21). The grievance was deemed an emergency and the Grievance Officer recommended the grievance be denied as moot because Plaintiff was being treated for ear issues and there was "no documentation found regarding hand/arthritis complaint." (*Id.* at p. 19). The Warden concurred in the Grievance Officer's recommendation, but the ARB again denied Plaintiff's grievance without further consideration because the grievance did not include any specific dates of when Plaintiff was seen by the healthcare unit (*Id.* at pp. 18-19).

### D.  Grievance 05-21-240, dated 5/22/2021 (Doc. 85-3, pp. 16-17)

Plaintiff filed Grievance 05-21-240 on May 22, 2021, to grieve the continued lack of medical treatment he was receiving for his various ailments, including his hand and arm pain (Doc. 85-3 at pp. 16-17). In pertinent part, Plaintiff wrote, "the medical staff here turn blind eye [to] the pain I deal with daily, my hands, chest pain, ear pain. I had a pass for 5-20-2021 at 1:00 PM which was cancel. Again I come to see that, the new Dr. Williams or not concern about my well being." (*Id.* at p. 16). The emergency grievance also stated, "I done had several pass to see Dr. Williams, the medical director, been cancelled." (*Id.*).

This grievance was deemed an emergency by the Warden on May 25, 2021 (*Id.*). The Grievance Officer recommended the grievance be denied as moot because Plaintiff was "seen by the NP on 5/24/2021." (*Id.* at p. 15). The Warden concurred in the recommendation (*Id.*). The grievance was then sent to the ARB and Director, who concurred in finding the grievance moot because Plaintiff had been seen by a nurse practitioner on May 24, 2021 (*Id.* at p. 14).

## II. *Analysis*

Dr. Williams argues Plaintiff failed to exhaust his administrative remedies as it relates to Plaintiff's deliberate indifference claim raised against her (*see generally* Doc. 85). Specifically, Dr. Williams contends that: (1) Grievance 08-20-257 was not grieving the same issue Plaintiff raised against her in this case, was submitted before he saw Dr. Williams, and does not identify Dr. Williams or any conduct related to her; (2) Grievances 10-20-176 and 05-21-189 do not identify Dr. Williams or any conduct that may be attributed to her and were not fully exhausted because the ARB denied both grievances on procedural grounds for failing to include dates; and (3) Grievance 05-21-240 was generally grieving Plaintiff's call pass being cancelled and him not receiving a follow-up with P.A. Luking, and neither "identif[ied] Dr. Williams or any conduct that can be imputed to her" nor put prison officials on notice that Plaintiff was grieving her medical judgment (*see* Doc. 85 at pp. 8-10). Plaintiff's response focuses on Grievance 05-21-240 and argues that it specifically complained of Dr. Williams' care and was fully exhausted (*see* Doc. 90).

Ultimately, the Court finds Grievance 05-21-240 to be dispositive. In contrast to Grievances 10-20-176 and 05-21-189, Dr. Williams has not argued that Grievance 05-21-240 was not procedurally exhausted (*see generally* Doc. 85 at pp. 9-10). As demonstrated by the record, Plaintiff timely filed this emergency grievance and timely appealed the Warden's decision to the ARB, which issued a decision on the merits prior to Plaintiff bringing this action (Doc. 85-3 at pp. 14-17). *See Pozo*, 286 F.3d at 1025. Accordingly, as both parties acknowledge, the key question is whether Grievance 05-21-240 adequately

identified Dr. Williams and Plaintiff's claim against her, such that Plaintiff exhausted his administrative remedies as to that claim.

Section 504.810(c) provides that a "grievance shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible." In interpreting this provision, numerous cases have unambiguously held that a grievance must identify who their target is or implicate their target in the alleged wrongdoing. *See Roberts v. Neal*, 745 F.3d 232, 235-36 (7th Cir. 2014) ("The grievance has a fatal defect, but it lies elsewhere; it lies in the absence of anything in it to indicate that Davis was the target."); *Cunningham v. Isaacs*, No. 3:21-CV-247-MAB, 2022 WL 3026854, at *3 (S.D. Ill. Aug. 1, 2022) ("In short, the grievance must provide sufficient information to identify the defendant as the target of the complaint or to implicate them in the alleged wrongdoing."); *Walker v. Harris*, No. 3:19-CV-00664-MAB, 2021 WL 3287832, at *4 (S.D. Ill. Aug. 2, 2021) ("Additionally, even if Plaintiff had properly submitted this grievance through the appropriate institutional channels and then to the ARB prior to filing this lawsuit, the contents of this grievance are not specific enough to exhaust the claim against Defendant Harris.").

Here, Dr. Williams argues Grievance 05-21-240 did not adequately identify her or Plaintiff's claim against her because it was grieving his call pass being cancelled and his inability to have a follow-up appointment with P.A. Luking (Doc. 85 at pp. 9-10). In

support of this argument, Dr. Williams quotes portions of Grievance 05-21-240 which discuss P.A. Luking and Plaintiff's cancelled appointments (*Id.*). Yet, Dr. Williams' motion fails to acknowledge the portions of Plaintiff's grievance that specifically addressed her by name (*see Id.*). To be clear, grievance 05-21-240 unequivocally names Dr. Williams on two occasions (*see* Doc. 85-3 at 16) and the Court therefore rejects Dr. Williams' contention that "grievance [05-21-240] does not identify Dr. Williams or any conduct that can be imputed to her." (Doc. 85 at p. 8).[4]

Accordingly, having determined that Grievance 05-21-240 identifies Dr. Williams, the Court next considers Dr. Williams' argument that the grievance only put prison officials on notice that Plaintiff was grieving his appointments being cancelled, and not that he was grieving Dr. Williams' medical judgment (*see* Doc. 91 at p. 2). Dr. Williams also emphasizes that Plaintiff's grievance was deemed moot at each level of review because he had a subsequent appointment with P.A. Luking on May 24, 2021, demonstrating that prison officials believed Plaintiff's grievance was only about his appointments being cancelled (*Id.*).

The Court is not persuaded by this argument either. Grievance 05-21-240 specifically named Dr. Williams and challenged her lack of concern for Plaintiff's wellbeing in light of the pain he was experiencing (Doc. 85-3 at p. 16). Plaintiff was similarly permitted to proceed in this action against Dr. Williams on a claim that she was

---

[4] While Dr. Williams' reply brief does ultimately concede that Grievance 05-21-240 identifies her by name (*see* Doc. 91 at pp. 1-2), Dr. Williams failed to address or even acknowledge this point in her initial motion (*see* Doc. 90 at p. 7) ("But Dr. Williams does not address in any way the portions of this grievance that identify her or relate to the sufficiency of her care for Plaintiff's condition.").

deliberately indifferent to his arm/hand issues and pain. When comparing the grievance with Plaintiff's claim against Dr. Williams in this case, the Court has little trouble concluding that grieving Dr. Williams' "lack of concern about [Plaintiff's] well-being" provided sufficient notice for the claim raised against Dr. Williams in this action. *See Wilson v. Holloway*, No. 19 C 8114, 2022 WL 444113, at *2 (N.D. Ill. Feb. 14, 2022) (rejecting the defendant's contention that a grievance's wording must match that of the complaint).[5]

Likewise, the Court rejects Dr. Williams' argument that Grievance 05-21-240 only provided sufficient notice about Plaintiff's cancelled appointments and P.A. Luking because the grievance was found to be moot in light of Plaintiff's subsequent appointment. Significantly, "a grievance must contain enough information about who caused the grieved of problem so that a prison can properly investigate and resolve

---

[5] A recent, contrasting example is illustrative. In *Jackson v. Esser*, the Seventh Circuit considered whether several grievances provided prison officials with sufficient notice of the issues raised in the plaintiff's complaint. 105 F.4th 948, 959 (7th Cir. 2024). Notably, one of the plaintiff's claims was an Eighth Amendment deliberate indifference claim based upon the failure to provide him with an inhaler and nasal spray. *Id.* In reviewing his grievances, the district court and Seventh Circuit found that the plaintiff challenged the denial of medical attention in three grievances. *Id.* However, all three of those medical grievances "dealt with a denial of medical attention for his dehydration, not for asthma or other conditions that would require nasal spray or an inhaler." *Id.* Accordingly, the Seventh Circuit held the plaintiff did not exhaust his administrative remedies as to that claim because "[a] claim that he was denied these items depends on different facts than does a claim that he was denied water and thus required a distinct grievance." *Id.*; *see also Bowers v. Dart*, 1 F.4th 513, 518 (7th Cir. 2021) ("Finding a grievance did not sufficiently identify the issue because "[c]ontending that Officer Rottar failed to come to his aid during the attack is not the same as alleging that the jail employees predicted but ignored the risk."). In stark contrast, here, Plaintiff both grieved the inadequate medical treatment he was receiving for his medical issues, including his hand pain, and directly identified Dr. Williams as one of the individuals who was not concerned about his wellbeing (Doc. 85-3 at p. 16). While Plaintiff's grievance may not have used terms such as "medical judgment" or "deliberate indifference," its contents make clear that Plaintiff was grieving the treatment provided by Dr. Williams and others at Lawrence for his hand and arm pain. *See Wilson v. Holloway*, No. 19 C 8114, 2022 WL 444113, at *2 (N.D. Ill. Feb. 14, 2022) ("Though the allegations in the complaint and the grievance are not identical, they involve the same alleged wrongdoing and wrongdoer. And it is readily apparent from the grievance that Mr. Wilson—though he may have specifically referred to a perceived need for crutches—was contending that Dr. Holloway minimized his back injury and did not properly treat him for it, which is the essence of the claim he asserts against her in this case.").

grievances." *Jackson v. Esser*, 105 F.4th 948, 960 (7th Cir. 2024) (internal quotation marks and citation omitted). This is because "federal courts lack discretion to consider a claim that has not traveled the required administrative path." *Bowers v. Dart*, 1 F.4th 513, 518 (7th Cir. 2021).

In this case, regardless of why prison officials found Plaintiff's grievance to be moot, the Grievance Officer's own report demonstrates the prison officials were aware that Plaintiff was both suffering from pain and grieving the lack of adequate treatment at Lawrence's Health Care Unit (*see* Doc. 85-3 at p. 15) ("Offender claims that the HCU at Lawrence C.C. provide adequate treatment."[6]). *See, e.g.*, *McGhee v. Torres*, No. 23-CV-24-PP, 2024 WL 2746701, at *5 (E.D. Wis. May 29, 2024) (Finding a grievance about not receiving adequate pain medication and care, including not having seen a doctor, to be sufficient to bring a claim against the doctor for not providing him with proper care for his injuries after his fall). In other words, Grievance 05-21-240 traveled the required administrative path and provided sufficient notice by both naming Dr. Williams and adequately identifying Plaintiff's deliberate indifference claim related to the treatment of his hand and arm pain. *Compare Saffold v. Illinois Dep't of Corr.*, No. 18 C 3301, 2021 WL 4477930, at *7 (N.D. Ill. Sept. 30, 2021) (finding the plaintiff provided sufficient information to identify the defendant even when the plaintiff never directly named the defendant because the prison could deduce who was involved based upon the grievance),

---

[6] The Court believes the Grievance Officer made a minor typo in this statement by stating "provide adequate treatment" when a cursory review of Plaintiff's grievance demonstrates that he was complaining of "inadequate treatment." (*See* Doc. 85-3 at pp. 15-17).

*with Roberts*, 745 F.3d at 236 (finding a failure to exhaust where the grievance only mentioned complaints against a doctor, but the plaintiff was actually seeking to bring suit against a nurse). In addition, Grievance 05-21-240 repeatedly requested for Plaintiff to be seen by an outside doctor for treatment of his pain (including that in his hand), demonstrating that Plaintiff was seeking better treatment and not simply grieving his appointments being cancelled (*see* Doc. 85-3 at pp. 16-17).

For all these reasons, the Court finds that Plaintiff exhausted his administrative remedies as it relates to his claim against Dr. Williams. Thus, Dr. Williams' exhaustion-based summary judgment motion is DENIED (Doc. 84).

## CONCLUSION

Dr. Williams' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies **is DENIED** (Doc. 84; *see also* Doc. 85).

**IT IS SO ORDERED.**

DATED:  August 29, 2024

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**
